## ANTONE REGO *v.* BERGSTROM MUSIC COMPANY, LIMITED.

### No. 1355.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. J. T. DeBOLT, JUDGE.

ARGUED MAY 22, 1922.                    DECIDED JUNE 5, 1922.

EDINGS AND PERRY, JJ., AND CIRCUIT JUDGE ANDRADE IN PLACE OF PETERS, C. J., DISQUALIFIED.

EVIDENCE—*illegal contract inadmissible.*

> Neither a plaintiff nor defendant may found his case, either in whole or in part, upon an illegal transaction, although his antagonist may have participated therein.

SAME—*same.*

> When a verdict may have been based upon or influenced by evidence improperly admitted of an illegal transaction, a new trial should be granted.

OPINION OF THE COURT BY EDINGS, J.

This is an action in trespass for the alleged forcible entry by defendant into the plaintiff's dwelling-house and the seizing and taking away therefrom of an electrical piano. The jury empaneled to try the case returned a verdict in favor of the plaintiff in the sum of $400. Upon the trial the plaintiff introduced evidence of the posses-

sion of the piano; the arrival of Mr. Adams, the treasurer and acting manager of the defendant corporation, together with a policeman, an auto-truck and two helpers, and the removal of the piano from the premises without the consent and against the protest of the members of the plaintiff's family. The plaintiff having rested the defendant introduced a written contract, commonly called a conditional sale agreement or an agreement of sale, covering the piano in question, which reads as follows:

"No. 592            CONTRACT            $750.00

"This Indenture Witnesseth, that the Bergstrom Music Company, Limited, doing business in Honolulu, T. H., the party of the first part, hereby agrees to sell to Jordan A. Silva, residing at 914 N. King St., the party of the second part, Piano Style Player Elec. Make Stroud No. 33152 for the sum of Seven Hundred Fifty Dollars, ($750.00) in U. S. Gold Coin, to be paid as follows, to wit: Twenty Dollars ($20.00) in cash, and the balance in equal monthly payments of Fifteen Dollars ($15.00) each, payable on the 15th day of each and every month thereafter, commencing on the 15th day of November, 1917. Interest to be paid each month on the day said installment falls due, at the rate of 8% per cent. per annum. And that the said party of the second part hereby agrees to buy the said piano at the price and upon the terms above specified, and further agrees that until the said purchase price, and interest, as aforesaid, is fully paid the title to the said piano shall not pass to him but the title thereto shall remain in the Bergstrom Music Company, Limited, the party of the first part, and in the event that any of said installments of principal or interest shall remain unpaid after they become due, as herein provided, the said party of the first part, or its assigns, may, at its option, without any legal process, and without prejudice to any other legal remedy or right of action, enter into and upon any premises where said piano may be, and take and carry away the same, as its own property, and all damages of such entry, taking and carrying away are hereby expressly waived, and in case the said piano shall be taken back the

said party of the second part hereby agrees to pay the expenses of removing same to warerooms, of said party of the first part, and also the sum of Fifty Dollars ($50.00), which is hereby agreed upon as liquidated damages to said piano by reason of its becoming second hand, and the further sum of Fifteen Dollars ($15.00) per month from this date to the date of this removal as the rent of said piano, however the said party of the second part shall receive credit upon said rents and liquidated damages for all payments made by him upon said piano.

"And the said party of the second part hereby covenants and agrees to pay all taxes assessed against said piano from this date and to keep the same continually insured for a sum at least equal to the unpaid price hereby agreed upon, for the benefit of the party of the first part, and whether the same shall be insured or not, to pay the said party of the first part all loss or damage to said piano by reason of fire or from any cause whatsoever, not to·exceed the amount of the unpaid purchase money, and not to remove said piano from 914 N. King St. without the consent of said party of the first part.

"And the said party of the first part further covenants and agrees that, as soon as the said purchase price and interest, as aforesaid, shall have been fully paid, it will give a good and sufficient bill of sale of said piano to said party of the second part and then, and not sooner, or otherwise, shall the title to said property pass to said party of the second part.

"And the said party of the second part hereby acknowledges that he has this day received full and complete possession of said piano upon the terms and conditions herein specified, and for no other purpose.

"In Witness Whereof, we have set our hands and seals to this agreement, in duplicate, in Honolulu, T. H., this 6th day of September, 1917.

( "JORDAN A. SILVA        (Seal)
"Sealed and delivered   (   Residence 914 N. King St.
in the presence of      (   "BERGSTROM MUSIC Co.  (Seal)
    "H. J. RAUSCH .      (   Residence Honolulu, T. H.
                        (            "H. J. R;"

and also introduced evidence showing that many installments of principal and interest were overdue and unpaid.

The plaintiff then in rebuttal introduced evidence to prove a waiver of this contract by defendant by virtue of the alleged consent of the treasurer and acting manager of the defendant corporation to a raffle held by Silva, whereby Silva sold tickets to various persons for a money consideration, each ticket representing a chance to win the piano, and whereby the plaintiff or some member of his family won the piano. To the admission of this evidence the defendant objected on the ground that a raffle is a lottery and unlawful and that the plaintiff, who took part in the raffle, cannot defeat a valid contract by a contract or agreement that is illegal and contrary to law, which objection was overruled, an exception noted and evidence was admitted to the effect that Silva had proposed the raffle to the said treasurer and acting manager of the corporation who had consented thereto and authorized Silva to deliver the piano to the plaintiff Rego; that the defendant corporation had taken forty chances in the raffle and had been paid one hundred fifteen dollars out of the proceeds of the raffle, which it had applied, $75 on a new contract for a piano then purchased by the plaintiff and the balance upon the old contract (herein recited).

A raffle is illegal and prohibited in this Territory by sections 4169 and 4178, R. L. 1915. The rule supported by the decided weight of authorities is that "If plaintiff in establishing his case is compelled to resort to the illegal contract no recovery can be had. * * * Further, plaintiff cannot succeed where, although not required to resort to the illegal transaction to establish a prima facie case, he is compelled to resort to it to meet a complete prima facie defense." 13 C. J. 502, 503. "Neither a plaintiff nor a defendant may found his case, either in whole or in part,

upon a fraudulent transaction, although his antagonist may have participated therein." *Mathews* v. *Wayne Junction Trust Co.,* 197 Fed. 237. Although it is doubtless true a plaintiff may recover if he is able to make out his case without calling upon the fraud for help, he must fail if such help is indispensable.

The plaintiff could not avail himself of the illegal transaction (the raffle) for the purpose of showing a waiver of the terms of the contract by the defendant and if he could not all testimony regarding this illegal subject was inadmissible and should have been excluded.

The plaintiff claims that the defendant had waived its right to the enforcement of the contract and that this fact was found by "the jury after seriously deliberating upon all the evidence produced," and further claims that there was other and independent evidence, aside from that of the raffle, upon which the jury could have founded its verdict.

The difficulty arises in determining upon what evidence the jury based its verdict, whether upon the evidence contended by plaintiff to have established the waiver claimed, or upon the evidence predicated upon the illegal transaction which was clearly inadmissible, and its introduction, over the objection of defendant, erroneous. It is not a question of whether or not there was evidence to support the verdict, but upon what evidence—the alleged competent evidence or the clearly inadmissible evidence— the jury based its finding. For upon the instructions of the court it was at liberty to base its verdict, if necessary, exclusively upon testimony which should not have been admitted. "It is elementary that the admission of illegal evidence, over objection, necessitates reversal." *Waldron* v. *Waldron,* 156 U. S. 361, 380. This illegal evidence might well have influenced the jury in arriving at its

verdict,—in fact, the verdict may well have been based solely upon it.

Exception numbered 1 is sustained.

There are other exceptions principally relating to the giving of, or refusal to give, certain instructions to the jury which we deem it unnecessary to comment upon as they cannot affect this decision. They may not arise upon a new trial.

A new trial is granted and it is so ordered.

*W. B. Pittman* (*Andrews & Pittman* on the brief) for plaintiff.

*H. R. Hewitt* (*Peters & Smith* with him on the brief) for defendant.